1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  KIMBERLI M. S., | Case No.:  21cv1836-AJB-MDD |
| 12                          Plaintiff, | |
| 13  v. | **REPORT AND RECCOMENDATION RESOLVING JOINT MOTION FOR JUDICIAL REVIEW IN FAVOR OF PLAINTIFF AND REMANDING TO THE COMMISSIONER** |
| 14  KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| 15 | |
| 16                          Defendant. | |
| 17 | [ECF NO. 14] |
| 18 | |

19
20        This report and recommendation is submitted to the United States
21  District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b)(1) and
22  Local Civil Rule 72.1(c) of the United States District Court for the Southern
23  District of California.
24        Kimberli M. S. ("Plaintiff") filed this action pursuant to 42 U.S.C. §
25  405(g) seeking judicial review of the final administrative decision of the
26  Commissioner of the Social Security Administration ("Commissioner")
27  regarding Plaintiff's application for disability benefits and supplemental

security income payments. (ECF No. 1). The Administrative Law Judge ("ALJ") found that Plaintiff was not disabled from the date last insured, January 31, 2013, through August 30, 2020, and denied Plaintiff's claim for benefits. (AR at 14-26 [Administrative Record "AR"]).

Now pending before the Court is the parties' Joint Motion for Judicial Review filed on October 27, 2022. (ECF No. 14). For the reasons set forth below, the Court **RECOMMENDS** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings consistent with the findings presented herein.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for Title II Social Security Disability Insurance benefits in October 2019 and subsequent Title XVI Supplemental Security Income benefits in November 2019.[1] (ECF No. 9 at 14 and AR at 238-46). Her applications originally alleged disability beginning February 2, 2009, when she was 54 years old. (*Id*. at 238, 240). These claims were denied initially on January 14, 2020, and again upon reconsideration on April 13, 2020. (*Id*. at 141-46). On June 29, 2020, Plaintiff filed a written request for a *de novo* hearing. (*Id*. at 147-48). ALJ Andrew Verne presided over the hearing on January 14, 2021. (*Id*. at 34-70, 178-96). At the hearing, Plaintiff amended her onset date to January 31, 2013 because she did not have any medical records for the years of 2009 to 2013. (AR at 62).

Plaintiff appeared at the hearing via telephone, represented by her

---

[1] The ALJ's decision states that Plaintiff applied for Title II and Title XVI benefits on October 2, 2019. The Administrative Record states Plaintiff applied for Title II benefits on October 7, 2019, and Title XVI benefits on November 7, 2019. The date discrepancies do not change the outcome of this decision.

counsel, Grant Felbaum. (*Id*. at 34-70). Plaintiff and Vocational Expert Linda Ferra testified at the hearing. (*Id*.).

On March 9, 2021, ALJ Verne issued a partially favorable decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act prior to August 31, 2020, but she became disabled on that date and continued to be disabled through the date of the ALJ's decision. (*Id*. at 15). On August 31, 2020, Plaintiff's age category changed to an individual of advanced age, and there were no longer any jobs Plaintiff could perform that existed in significant numbers. (*Id*. at 23-25). The ALJ found that Plaintiff was not disabled prior to that date despite having severe impairments concerning her knee, spine, foot, shoulder, and major depressive disorder, because Plaintiff retained the ability to perform certain specified jobs with stated limitations. (*Id*. at 17-23).

On April 23, 2021, Plaintiff requested the Appeals Council review the ALJ's decision. (*Id*. at 229-237). The Appeals Council denied the request for review on August 30, 2021. (*Id*. at 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(h). Having exhausted all administrative remedies, Plaintiff brought this timely civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g).

## II.  SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, ALJ Verne found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (AR at 17). ALJ Verne found at step two that Plaintiff had the following severe impairments: (1) left patellar fracture; (2) degenerative disk disease of the cervical spine; (3) lumbar strain secondary to left metatarsal foot fracture; (4) rotator cuff syndrome on the left; and (5)

major depressive disorder. (*Id.*). Plaintiff also had non-severe impairments of diabetes mellitus type II, neuropathy, obesity, cataracts, hypertension, sinusitis, and history of methamphetamine use. (*Id.*). ALJ Verne proceeded to consider Plaintiff's impairments at step three of the sequential process.

At step three, the ALJ found that Plaintiff did not have a physical impairment or combination of impairments that met or medically equaled one of the impairments listed in the relevant sections of the Commissioner's Listing of Impairments.[2] (AR at 18). The ALJ stated that a physician had not recorded any findings of a listed physical impairment, and that there was no evidence in the medical records of such an impairment. (*Id.*).

The ALJ also found that Plaintiff's mental impairment did not meet the criteria set out under the four broad functional areas of the disability regulations for evaluating mental disorders, known as "paragraph B." (AR at 18). To meet that criteria, which assesses the severity of a mental impairment, Plaintiff's impairment would have to cause two "marked" limitations or one "extreme" limitation. (*Id.*). The ALJ determined that Plaintiff's mental impairment only caused "moderate limitation on the ability to understand, remember, or apply information, mild limitation in interacting with others, moderate limitation on the ability to concentrate, persist, or maintain pace, and mild limitation on the ability to adapt or manage oneself." (*Id.*).

When a claimant's impairments, or combination of impairments, do not meet the criteria of a listed impairment, as was the case here, the ALJ next

---

[2] If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR §§ 404.1509 and 416.909), the claimant is deemed disabled. If it does not, the analysis proceeds to the next step.

determines the claimant's residual functional capacity ("RFC"), i.e., the ability to do physical and mental work activities despite the claimant's impairments. (AR at 16). Step four then considers whether the claimant is not disabled because she has the RFC to do past relevant work, and step five looks at her ability to do any other work considering her RFC, age, education, and work experience. (*See Id.*).

The ALJ determined at step four that Plaintiff was unable to perform any past relevant work as an accounting clerk, and the vocational expert agreed. (AR at 23-24, 64-66); *see* 20 C.F.R. §§ 404.1565 and 416.965. The ALJ concluded, however, that considering Plaintiff's age, education, work experience and RFC prior to August 31, 2020, she was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (AR at 24-25). The ALJ accepted the testimony of the vocational expert, who said Plaintiff could perform the requirements of Housekeeper/Cleaner (DOT 323.687-014), Photocopy Machine Operator (DOT 207.685-014), and Marker (DOT 209.587-034). (AR at 24-25).

In reaching his decision, the ALJ assessed Plaintiff as retaining the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), and SSR 83-10, with the following limitations:

> [Plaintiff can] lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours out of an 8-hour workday with normal breaks; can sit for 6 hours out of an 8-hour workday with normal breaks; can occasionally lift overhead with the left upper extremity; can frequently push and/or pull with the left lower extremity; can occasionally climb ramps or stairs; cannot climb ladders, ropes and scaffolds; can occasionally perform balancing, stooping, kneeling, and crawling; can have no interaction with the general public but can have occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information

or hand-off of product; cannot perform highly time pressured tasks such that the claimant is limited to generally goal-oriented work, not time sensitive strict production quotas (that is, production rate pace work with strict by the minute or by the hour production quotas that are frequently and/or constantly monitored by supervisors or that are fast paced); limited to a low-stress environment where there are few work place changes (i.e., the claimant would not have to switch from task to task) with minimal decision-making capabilities (such that she would be unable to exercise substantial discretion in carrying out the work activities); and she is limited to understanding, remembering, and carrying out simple, routine, repetitive tasks.

(AR at 19).

The ALJ stated that the RFC assessment was based on all the evidence and the extent to which Plaintiff's symptoms were consistent with the objective medical evidence and other evidence. (*Id*.). The ALJ also stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (*Id*.). The ALJ, therefore, concluded that Plaintiff was not disabled until the established onset date of August 31, 2020, when her age category changed to an individual of advanced age. (*Id*. at 19-23).

### III.  DISPUTED ISSUES

The first issue raised is whether the ALJ failed to properly evaluate the medical opinion evidence when determining Plaintiff's RFC. The second issue is whether the ALJ failed to properly evaluate Plaintiff's subjective statements. The issues in contention only address Plaintiff's mental impairments, and the onset date of January 31, 2013, until August 30, 2020. Therefore, the Court only considers those impairments and dates in this discussion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## IV.  STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. *Id*.; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (Under 20 C.F.R. § 404.1520c, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

"Substantial evidence means more than a mere scintilla but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)(quoting *Desrosiers v. Sec'y Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).

An ALJ's decision is reversed only if it "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Id*. "To determine whether substantial evidence supports the ALJ's determination, [the Court] must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." (*Id*.). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

"When the evidence can rationally be interpreted in more than one way,

the court must uphold the [ALJ's] decision." *Mayes,* 276 F.3d 453, 459 (9th Cir. 2001). Section 405(g) permits the reviewing court to "affirm, modify, or reverse" the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the case to the Social Security Administration for further proceedings. (*Id*.).

# V. DISCUSSION

## A. Whether the ALJ Failed to Properly Evaluate the Medical Opinion Evidence When Determining Plaintiff's Mental Residual Functional Capacity

A claimant's RFC is determined by the ALJ and describes the Plaintiff's capabilities despite the limitations resulting from her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC determination considers all medically determinable impairments, severe or not severe, and all relevant evidence on the record, including medical opinions from medical sources. *Id*. at §§ 404.1545(a)(2)-(3), 416.945(a)(2)-(3). Medical opinions are statements from medical sources about a claimant's abilities and limitations related to the workplace and resulting from an impairment. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because he failed to "examine carefully" or "articulate" how persuasive he found the examining and treating specialists' opinions based on a meaningful application of the regulating factors. (ECF No. 14 at 24-25). Specifically, Plaintiff argues that the ALJ erred in finding the opinions of Dr. Dhamija, Dr. John, and Dr. Ryser, not persuasive.[3] Plaintiff

---

[3] Plaintiff appears to erroneously refer to Dr. Tanner John as Dr. Preston (citing Dr. John's opinion but attributing it to a Dr. Preston), while

also challenges the ALJ's evaluation of its own examining psychiatrist, Dr. Bhavsar. Plaintiff argues the ALJ had a duty to seek clarification when he rejected that opinion. Defendant maintains that the ALJ properly weighed the evidence when evaluating Plaintiff's RFC because the ALJ considered all "relevant evidence," and settled on the "middle ground" between the divergent opinions. (*Id.* at 25-27).

The ALJ must evaluate the persuasiveness of medical source opinions by considering prescribed enumerated factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5). The "most important factors" considered are consistency and supportability. *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2). The regulations describe supportability as: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is described as: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ found four medical opinions unpersuasive. Courts equate finding a medical source "not persuasive" with rejecting a medical opinion. *See, e.g.*, *Woods v. Kijakazi*, 32 F.4th 785, 792-94 (9th Cir. 2022); *Steven R. T. v. Kijakazi*, No. 20-CV-2257-KSC, 2022 WL 2303950, at *12 (S. D. Cal. June 24, 2022). "An ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by

___

Defendant refers to Dr. John as Dr. Tanner. (ECF No. 14 at 9, 29). The court will refer to the doctor as Dr. John.

substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

The Court examines the ALJ's evaluation of Dr. Dhamija, Dr. John, Dr. Ryser's opinions under the consistency and supportability factors. Then, the Court examines whether the ALJ had a duty to seek clarification of Dr. Bhavsar's opinion.

### 1. Dr. Dhamija & Dr. John

Dr. Anish Dhamija is a psychiatrist who began treating Plaintiff in July 2019. (*See* AR at 1163). On June 9, 2020, Dr. Dhamija diagnosed Plaintiff with treatment-resistant depression, and an unspecified personality and trauma disorder.  (*Id.*). Dr. Dhamija found that Plaintiff had marked limitations in her ability to: (1) perform activities within a schedule and consistently be punctual; (2) sustain ordinary routine without supervision; (3) perform at a consistent pace without rest periods of unreasonable length or frequency; (4) adhere to basic standards of neatness; (5) set realistic goals; and (6) make plans independently. (*Id.* at 1166). She remarked that Plaintiff was "severely limited to do occupational activities secondary to her marked impairments from mental illness." (*Id.* at 1167).

Dr. Tanner John is a psychiatrist who began treating Plaintiff on June 23, 2020. (*See* AR at 329). On January 5, 2021, Dr. John diagnosed Plaintiff with major depressive disorder, which was severe and recurrent. (*Id.* at 1474). Dr. John found that Plaintiff had marked limitations in her ability to: (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or near others without

21cv1836-AJB-MDD

being distracted by them; (4) make simple work-related decisions; (5) complete a work day without interruptions from psychological symptoms; (6) perform at a consistent pace without rest periods of unreasonable length or frequency; (7) accept instructions and respond appropriately to criticism from supervisors; (8) adhere to basic standards of neatness; (9) respond appropriately to workplace changes; (10) set realistic goals; and (11) make plans independently. (*Id.* at 1477).

### a. Consistency

The ALJ did not find Dr. Dhamija or Dr. John's findings of marked limitations persuasive, "as they [were] largely inconsistent with the claimant's conservative course of mental health treatment throughout the periods at issue, as well as largely benign mental status examinations throughout the file." (AR at 22). The ALJ stated:

> These examinations showed the claimant had some mood instability that was stabilized with medication, and even as she was off psychotropic medications, she suffered no decompensation episodes and had no cognitive disfunction or significant behavioral issues that would preclude activities inconsistent with the mental residual functional capacity assessed herein.

(*Id.*). The ALJ further concluded that Plaintiff displayed the ability to partake in activities that were inconsistent with marked or extreme functional limitations. (*Id.*). The ALJ stated:

> The claimant remains capable of obtaining medical and mental health treatment on her own, and advocating for her own care within the clinical setting. At the hearing, she also conveyed that she could concentrate to watch television, care for her own personal needs, and clean her living area. She also noted she had no problems with interacting with strangers (Testimony). The claimant reported similar activities in her Adult Function Report, as well as the ability to handle funds, shop in stores, handle her public benefits and EBT card, and interact with her friend (see 5E).

Elsewhere in the record, she noted she could "set things up" so that she would not forget to do things (22F/5).

(*Id*).

Plaintiff argues that both doctors' marked limitation findings are consistent with the record, and the ALJ failed to "compare the consistency" of the medical records with Dr. Dhamija and Dr. John's opinions. (ECF No. 14 at 13).

In support of her argument, Plaintiff cites to several consistent records regarding Plaintiff's inability to function in a work setting, such as: (1) depression (AR at 454, 457, 466-67, 472-73, 506, 508-09, 537, 539, 541, 549, 625-27, 1336, and 1439-45); (2) anxiety (AR at 547, 625, and 1197); (3) an abnormal affect (AR at 454, 467, 473, 547, 626, 1174, 1197, 1210, 1218, 1259, 1274, 1336, and 1449); (4) feelings of worthlessness (AR at 537, 1305); (5) hostility and irritability (AR at 1197, 1259); (6) disturbed sleep (AR at 537, 543, 547, 631, 706, 1259, 1305, 1339-40, 1346, 1432, and 1465) and nightmares (AR at 625); (7) loss of interests (AR at 506, 1251, 1259, and 1305); (8) decreased motivation (AR at 457, 499, 537, 547, 625, 627, 629, 631, 1218, 1251, 1259, 1305, 1308, 1319, and 1339-1440); (9) social withdrawal or isolation (AR at 535, 541, 627, 701, 706, and 1346); (10) poor grooming (AR at 626, 706); and (11) abnormal eye contact (AR at 547, 707-708). (ECF No. 14 at 12-13).

Defendant rightly counters that Plaintiff carefully selected excerpts from the record in support of her interpretation, and that the ALJ's decision was supported by substantial evidence. (ECF No. 14 at 29). Defendant argues that the proper inquiry here is whether the ALJ's interpretation was supported by substantial evidence, not whether the record contains a different rational interpretation. (*Id*.).

Defendant points out that "where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ's determination considered Plaintiff's medical evidence and treatment history, which showed that Plaintiff's mood stabilized with medication. He also mentioned several of Plaintiff's demonstrated capabilities such as the ability to concentrate and interact with strangers. While the record may give way to a different interpretation of the record, such as Plaintiff's interpretation that the doctor's marked limitation findings are consistent with the record, the ALJ's conclusion is adequately articulated, rational, and supported by substantial evidence.

The Court finds that the ALJ did not err in evaluating the consistency factor of Dr. Dhamija and Dr. John's opinions. The ALJ's evaluation was properly articulated with substantial evidence supporting his conclusion. The ALJ's supportability finding, however, lacks proper articulation.

### b. Supportability

In addition to consistency, the ALJ must consider and articulate supportability in determining the persuasiveness of medical opinions. The ALJ rejected Dr. Dhamija and Dr. John's opinions, explaining that they were "inconsistent" with the record, but he made no explicit determination of supportability. (AR at 22). Plaintiff correctly argues that the ALJ failed to address that factor in finding Dr. Dhamija and Dr. John's marked limitation findings "not persuasive." (ECF No. 14 at 9).

Defendant argues that an ALJ's decision to discredit a medical opinion "must simply be supported by substantial evidence." (*Id.*). *See Woods*, 32 F. 4th at 788. While Defendant is correct that substantial evidence must support the ALJ's decision, there is more to the *Woods* holding than

Defendant asserts. Substantial evidence alone is not enough. *See* 20 C.F.R. § 404.1520c(b).

As mentioned, "[a]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2). *Woods*, 32 F.4th at 792.

Defendant incorrectly asserts that Plaintiff's argument fails because Dr. Dhamija and Dr. John's "opinions" consisted of checking off boxes in a questionnaire, and neither doctor cited any supporting objective medical findings. (ECF No. 14 at 31). This is Defendant's impression of the record, but it is not the ALJ's interpretation of the facts because the ALJ did not make that finding. (*See* AR at 22). This Court's authority is limited to grounds asserted by the ALJ. *See Stout v. Comm'r of the Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). It is possible that the doctors' opinions were not supported by objective medical findings, as Defendant suggests, but that was the ALJ's issue to resolve in the first instance, not this Court's.

The Court finds that the ALJ insufficiently articulated his evaluation of the supportability factor in Dr. Dhamija and Dr. John's opinions.

### 2.  Dr. Ryser

Dr. Christina Ryser is a psychologist who evaluated Plaintiff on January 5, 2021. (AR at 1463). As part of the evaluation, Dr. Ryser conducted a clinical interview with a mental status examination, and a review of Plaintiff's medical records. (*Id.* at 1463-1471). Dr. Ryser observed that Plaintiff had slumped posture, but otherwise noted normal findings as to

appearance, presentation, speech/language, and behavior. (*Id.* at 1468-69). The mental status examination displayed a depressed affect, somewhat limited memory and concentration skills, and "fairly good" judgment. (*Id.* at 1470). Dr. Ryser diagnosed Plaintiff with persistent depressive disorder, and major depressive disorder, which was recurrent and moderate. (*Id.*).

Regarding functional capacity, Dr. Ryser noted that Plaintiff appeared "challenged" to consistently understand, remember, and apply information. (*Id.* at 1471). Plaintiff, further, appeared "limited" in her ability to learn, recall, use information to perform work activities, concentrate, persist, maintain pace, focus on work activities, and stay on task at a sustained rate. (*Id.*). Dr. Ryser also noted that Plaintiff would likely have difficulty relating to and working with supervisors, regulating her emotions, controlling her behavior, maintaining her well-being in a work-setting, and dealing with normal pressures in a competitive work setting. (*Id.*).

In the Psychological/Psychiatric Impairment Questionnaire Dr. Ryser conducted, she noted several signs and symptoms in support of Plaintiff's diagnosis, such as depressed mood, constricted abnormal affect, anhedonia/pervasive loss of interests, decreased energy, difficulty thinking or concentrating, and social withdrawal or isolation. (AR at 1459). Dr. Ryser indicated the most frequent or severe symptoms as low mood, amotivation, anhedonia, excessive sleep, low energy, limited memory, and attention/concentration. (*Id.* at 1460).

Dr. Ryser found that Plaintiff had marked limitations in her ability to: (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule and consistently be punctual; (4) complete a work day without interruptions from psychological symptoms; (5) perform at a

consistent pace without rest periods of unreasonable length or frequency; and (6) travel to unfamiliar places or use public transportation. (AR at 1461).

### Consistency & Supportability

The ALJ found Dr. Ryser's opinion "not entirely persuasive." (AR at 23). He concurred that Plaintiff is limited in the areas Dr. Ryser noted, but he found that her opinion was "quite vague as to what extent the limitations affect the claimant's abilities." (*Id.*).

Plaintiff argues that the ALJ erred in his evaluation of Dr. Ryser's opinion because he did not articulate the consistency and supportability factors, and instead, only stated that the opinion was "quite vague." (ECF No. 14 at 19). The Court agrees.

Plaintiff contends that the ALJ's "vague" determination is boilerplate language with no connection to the record. (ECF No. 14 at 19). Dr. Ryser's opinion reported numerous areas of marked limitations, indicating that Plaintiff could not perform more than two-thirds of an 8-hour workday. (AR at 1461). Dr. Ryser also reported several areas of moderate-to-marked limitations, indicating that Plaintiff could not perform one-third to two-thirds of an 8-hour workday. (*Id.*). Lastly, Dr. Ryser opined that Plaintiff would miss more than three days of work on average due to her impairments or treatment. (*Id.* at 1462).

Defendant argues that the ALJ was correct in stating that Dr. Ryser's opinion was vague. (ECF No. 14 at 31, 32). Defendant contends that Dr. Ryser's opinions are vague because she provided general conclusions, such as Plaintiff "appeared challenged," "appear[ed] limited," "could also be challenged," and "was likely to struggle" in some areas of mental functioning. (*See* ECF No. 14 at 32).

While Defendant is correct that portions of Dr. Ryser's opinions are

generalized, it is not entirely vague. The ALJ and Defendant cherry-pick comments from Dr. Ryser's evaluation report that fail to fully represent her opinion. A careful review of the record shows that Dr. Dhamija and Dr. John used the same impairment questionnaire to assess Plaintiff's limitations as Dr. Ryser. (*See* AR at 1167, 1477). The ALJ did not determine that Plaintiff's limitations were "vague" in those reports.

The ALJ's swift evaluation of Dr. Ryser's opinion does not allow the Court to trace the path of the ALJ's reasoning, which is required. *See* 82 Fed. Reg. at 5,858 (stating that the articulation requirements in the rules allow a subsequent reviewer or reviewing court to trace the path of the adjudicator's reasoning). The Court, therefore, finds that the ALJ insufficiently articulated his evaluation of Dr. Ryser's opinion.

The Court finds that the ALJ's evaluations of Dr. Dhamija, Dr. John, and Dr. Ryser's opinions were inadequate. The ALJ articulated the consistency factor when evaluating Dr. Dhamija and Dr. John's medical opinions, but he failed to articulate the consistency and supportability factors in every other instance. This is required to trace the path of the adjudicator's reasoning.

The Court next examines whether the ALJ had a duty to seek clarification of Dr. Bhavsar's opinion because he also found it vague.

### 3.  Dr. Bhavsar

Dr. Madhumalti Bhavsar is a psychiatrist who evaluated Plaintiff on December 15, 2019, at the request of the Social Security Administration.[4] (AR at 1132-1336). At the evaluation, Plaintiff reported symptoms of depression,

---

[4] The ALJ erroneously refers to Dr. Madhumalti Bhavsar as. Dr. Dhaysar. (AR at 21).

anxiety, feelings of sadness and worthlessness, not wanting to meet other people, loss of interests, inconsistently showering, crying spells, feeling overwhelmed and worried, feeling tired all the time, and difficulty with concentration and making decisions. (*Id.* at 1132-33).

His mental status examination revealed that Plaintiff was tense, with a depressed mood, blunted affect, and no psychomotor retardation. (AR at 1134). Dr. Bhavsar noted that Plaintiff made good eye contact, had normal speech, and did not have delusions or hallucinations. (*Id.* at 1135). As to memory, Plaintiff recalled three out of three objects immediately, and two out of three objects in five minutes. (*Id.*). As to concentration, Plaintiff performed "Serial 3s and Serial 7s," and she was able to spell the word "music" forward and backward. (*Id.*). Dr. Bhavsar diagnosed Plaintiff with major depression, which was recurrent, and severe. (*Id.*).

As to Plaintiff's functional assessment, Dr. Bhavsar found Plaintiff was "severely limited" in her ability to: (1) follow detailed instructions; (2) interact appropriately with the public; (3) comply with job rules such as safety and attendance; (4) respond to changes in routine in a work setting; and (5) respond to work pressure in a usual work setting. (AR at 1136). Dr. Bhavsar found Plaintiff was "not limited" in her ability to follow simple, oral and written instructions, nor in her daily activities. (*Id.*).

The ALJ found Dr. Bhavsar's opinion "not persuasive," and did not adopt it. (AR at 22). The ALJ stated:

> Dr. Dhaysar [Bhavsar] noted that the claimant was "severely limited in multiple areas of functioning from a mental health perspective. (12F/5). The term "severely" used to denote functional limitations is of course vague and of little use in analyzing the case. Proper terms of art such as "moderate, marked" etc. offer better guidance to evaluate said opinion and functionality. Here, the claimant's mental status examination does not reflect a higher level

of dysfunction other than the undersigned applied as the residual functional capacity. She demonstrated depressed mood and blunted affect, but the evaluation was otherwise entirely within normal limits and unremarkable for significant cognitive deficits or behavioral issues (see 12F/3-4). The claimant also presented was appropriately dressed and well-groomed. She was cooperative during the examination. She reported activities of daily living that included watching television, napping, Thus, Dr. [Bhavsar's] opinion on the claimant's limitations far exceed the objective findings conveyed during the evaluation and documented elsewhere in the record. As such, it is not persuasive and not adopted herein.

(*Id.* at 21-22).

### **Duty to Seek Clarification**

Plaintiff argues that the ALJ had a duty to seek clarification when he found Dr. Bhavsar's opinion vague. (ECF No. 14 at 22). The real question, however, is whether the ALJ had a duty to do so.

In *Tonapetyan v. Halter*, the court states "ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." (citing *Smolen,* 80 F.3d at 1288; *Armstrong v. Commissioner of Soc. Sec. Admin.,* 160 F.3d 587, 590 (9th Cir.1998)). The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998); *Smolen,* 80 F.3d at 1288; *Tonapetyan*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, there was an adequate amount of evidence in the record to properly evaluate and develop the record without Dr. Bhavsar's opinion, so a duty to investigate was never triggered.

The ALJ had thousands of pages of Plaintiff's medical records, including

multiple opinions from other psychiatrists and psychologists to inform his decision. Under these circumstances, there was no duty for the ALJ to further develop the record. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (rejecting assertion that ALJ had a duty to recontact examining physician to further develop the record— "[g]iven that the ALJ had years of [plaintiff's] mental health records and multiple opinions from non-examining psychiatrists to inform her decision, this duty [to further develop the record] was not triggered"). The ALJ finding Dr. Bhavsar's opinion vague and of "little use," is not enough alone to trigger this duty to develop the record.

The Court examines next whether the ALJ erred in evaluating Plaintiff's subjective statements, which he determined were not "fully support[ed]" by the record. (AR at 21-23).

## B.   Whether the ALJ Failed to Properly Evaluate Plaintiff's Subjective Statements

An ALJ assesses a claimant's subjective statements regarding his or her symptoms and limitations in two parts. §§ 404.1529(a), 416.929(a). First, an ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." (*Id.*). Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Ragudo v. Saul*, 411 F. Supp. 3d 1125, 1133-34 (S.D. Cal. 2019) (citing *Smolen*, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ "determine[s] credibility, resolve[s] conflicts in the testimony, and resolve[s] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *Burrell v. Colvin*, 775 F. 3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony and did not make "a specific finding linking a lack of medical records to [the claimant's testimony about the intensity of her . . . symptoms").

In assessing a claimant's statements about his or her symptoms, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (listing factors) (citation omitted).

While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain . . . it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."); *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical

support for the severity of his pain"); Social Security Ruling (SSR) 16-3p (S.S.A. Oct. 25, 2017) (SSA adjudicators should "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").[5]

## 1. Plaintiff's Subjective Statements

At the Administrative hearing, Plaintiff testified that she had been depressed since her teens, and it had "gotten progressively worse through the years." (AR at 45). At each of her jobs, Plaintiff reported she was "more and more late to work" and "just going downhill." (*Id.*). Plaintiff testified to sleeping 10-16 hours a day, depending on the medication she was taking. (*Id.* at 48). She testified to not having an interest in doing anything, not even leisurely activities such as going shopping, going to the movies, or going out to eat. (*Id.*). She also testified that she sometimes "does not do the things [she] should do" such as shower and eat. (*Id.* at 48-49). She said she felt "dead of emotion and feeling." (*Id.* at 49).

Regarding her concentration capabilities, Plaintiff said she does not have much to focus on, but she can focus on "simple" things such as watching a television show. (*Id.* at 52). She said she blames difficulties with memory on "getting older." (*Id.*). She stated that she only interacts with her mother and roommate, and that she rarely leaves the house. (*Id.* at 50). She goes grocery shopping once a month, and her roommate picks up additional groceries

---

[5] Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy" to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation." *See* SSR 16-3p, 2017 WL 5180304, at 1-2, 10-11.

during the week if necessary. (*Id.* at 50-51). She does not typically cook meals, and instead eats already prepared food such as yogurt and cereal. (*Id.* at 57). Plaintiff stated she can load the dishwasher, vacuum every couple of days, and clean occasionally. (*Id.* 58-59).

## 2. The ALJ's Analysis of Plaintiff's Subjective Statements

The ALJ found that the record established a medically determinable impairment that could reasonably be expected to cause Plaintiff's alleged symptoms, but he concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully supported by the record. (AR at 20).

This finding meets the threshold with respect to part one. Next, because there was no finding that Plaintiff was malingering, the ALJ was required to make specific findings stating clear and convincing reasons for rejecting Plaintiff's subjective testimony, which the Court finds he failed to do. *Smolen*, 80 F.3d at 1283-84.

### a. Conservative Treatment

The ALJ stated that Dr. Dhamija's marked limitation findings and Plaintiff's daily activities were inconsistent with her "conservative" course of treatment. (AR at 22). Plaintiff argues that the ALJ failed to properly evaluate her subjective statements because he labeled her course of treatment "conservative." (*See* AR at 22).

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue,* 481 F.3d 742, 750–51 (9th Cir.2007). The problem with the conservative-treatment rationale, however, is that the ALJ never suggested what more aggressive treatment options might be pursued. *See Lapeirre-Gutt v. Astrue*, No. 09-15642, 2010 WL 2317918, at *1 (9th Cir. June 9, 2010) ("A claimant

23

cannot be discredited for failing to pursue non-conservative treatment options where none exist."). The ALJ labeled Plaintiff's treatment "conservative," despite the many prescribed depression medications and the extensive therapy she attended.

While the ALJ did not state that Plaintiff should have pursued a more aggressive treatment, he highlighted twice that Plaintiff did not require inpatient treatment or hospitalization. (AR at 21).

Plaintiff correctly argues, however, that psychiatric hospitalization is not required for a claimant to be found mentally disabled. *See Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (Posner) (finding "the institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves"). *See also French v. Astrue*, No. EDCV 09-01489, 2010 WL 2803965 *6 (C.D.Cal. July 15, 2010) ("[a] claimant may suffer from a severe mental impairment without having been hospitalized.").

Moreover, the ALJ only discussed Plaintiff's capabilities as opposed to her limitations when finding the marked limitations and daily activities inconsistent with Plaintiff's "conservative" treatment. He noted that Plaintiff could concentrate to watch television, care for her own person needs, clean her living room, interact with strangers, handle her funds, shop in stores, nap, and interact with her friend. (AR at 22).

The ALJ merely stating that Plaintiff's treatment was "conservative" is not sufficient for rejecting her subjective statements. The ALJ did not identify which statements he was accepting or rejecting. Instead, he only recited Plaintiff's capabilities and made generalized conclusions.

/ / / /

/ / / /

### b. Applying for Jobs

Plaintiff also argues that the ALJ failed to evaluate her subjective statements because he noted that Plaintiff applied for jobs which indicated her ability to work. (AR at 21).

The issue is not whether a disabled person can apply for a job but whether she is hired and can maintain a job. *See Lopez v. Massanari*, 23 Fed. Appx. 667, 669-670 (9th Cir. 2001) (concluding that claimant's search for work was not a clear and convincing reason to reject her testimony). In his decision, the ALJ stated Plaintiff "reported being able to apply for jobs [as] an indication that she felt she was able to work despite her poor mood." (AR at 21). He failed to evaluate whether Plaintiff was hirable or capable of maintaining a job. Again, the ALJ only mentioned Plaintiff's capabilities, and not her limitations, besides mentioning her "poor mood." The Court finds that the ALJ rejected Plaintiff's subjective pain statements without basing it on substantial evidence.

The ALJ's reasoning is not clear or specific and is insufficient for discounting Plaintiff's subjective statements. The ALJ's failure to specifically identify which parts of the Plaintiff's testimony or statements were not credible, and then connect those statements to the record of alleged inconsistency prevents the Court from conducting a meaningful judicial review. *See Reddick*, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *Smolen*, 80 F.3d at 1284 ([a]n ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Rios v. Saul*, No. 19CV704-LL, 2020 WL 71080, at *5 (S.D. Cal. Jan. 7, 2020).

/ / / /

## VI.  CONCLUSION AND RECOMMENDATION

The only remaining question for the Court is whether to remand for further administrative proceedings or for the payment of benefits.  "The decision of whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court."  *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  A remand for an immediate award of benefits is appropriate only in rare circumstances.  *Leon v. Berryhill*, 874 F.3d 1130 (9th Cir. 2017).  The Court concludes that "[t]he rare circumstances that result in a direct award of benefits are not present in this case." *Id.*

Instead, the Court finds further administrative proceedings would serve a meaningful purpose so that Plaintiff's testimony may be properly evaluated. On remand, the ALJ must: (1) evaluate the consistency and supportability factors in discussing each medical opinion; (2) provide specific reasons for the weight given to the individual's subjective statements; and (2) those reasons must be (a) consistent with and supported by the evidence cited, and (b) clearly articulated so the Plaintiff and any subsequent reviewer can assess how the adjudicator evaluated the claimant's symptoms. *See* SSR 16-3p (the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . .").

Based on the foregoing, the Court **RECOMMENDS** that the District Court **VACATE** the ALJ's decision and **REMAND** this case for further administrative proceedings consistent with the findings presented herein.

**IT IS HEREBY ORDERED** that any written objection to this report

must be filed with the Court and served on all parties no later than **March 17, 2023**. The document should be captioned "Objections to Report and Recommendation."

 **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 24, 2023**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: March 3, 2023

      Hon. Mitchell D. Dembin
      United States Magistrate Judge

21cv1836-AJB-MDD